UNITED STATES DISTRICT COURT – EASTERN DISTRICT
CENTRAL ISLIP, STATE OF NEW YORK
------------------------------------------------------------------------X
CHRISTIAN KILLORAN, on behalf of his son, A.K., CHRISTIAN KILLORAN and TERRIE KILLORAN,

      Plaintiffs,

- versus –

WESTHAMPTON BEACH SCHOOL DISTRICT, SUZANNE MENSCH, JOYCE DONNESSON, as Board of Education Members, Michael Radday, as Superintendent, and MARY ANN AMBROSINI, as Director of Pupil Personnel and CSE Chairperson,

      Defendants.
------------------------------------------------------------------------X

Index #:

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 05 2020 ★
LONG ISLAND OFFICE

CV-20 4763

**Verified Complaint**

Preliminary Statement

SEYBERT, J.

LOCKE, M. J.

1. As the Court is very familiar with the litigants' dispute, there is no need to re-state the entire legal history between the parties.

2. However, as this complaint deals exclusively with the plaintiff's 2019-2020 academic year, the Court must be updated with the relevant facts.

3. As the Court is aware, the purpose of a Committee on Special Education (CSE) is to develop and implement the educational placement of a "special education student".

4. In relation to the plaintiff's educational placement for the 2019-2020 academic year, three Committee on Special Education (CSE) meetings were held.

5. Collectively, these CSE meetings constituted what is known as the plaintiff's "annual review".

6. The purpose of an "annual review" is to fortify the educational placement for a student for the following academic year.

1

7. Accordingly, the purpose of the referenced "annual review" was to set forth the plaintiff's educational placement for the 2019-2020 academic year.

8. Following the completion of the "annual review", the plaintiff commenced an administrative due process complaint against the defendant district, therein alleging numerous violations of the IDEA.

9. The New York State Department of Education assigned the Impartial Hearing Officer (IHO), Kenneth Ritzenberg, to the plaintiff's case.

10. Upon accepting his assignment, IHO Ritzenberg scheduled a pre-hearing conference.

11. During such conference, the defendant district argued that the plaintiff's case should be dismissed pursuant to the alternating legal doctrines of "res judicata" and/or "collateral estoppel".

12. Within the context of such conference, the plaintiff argued against the defendant district's position.

13. Within the context of such conference, IHO Ritzenberg opined that he felt that the plaintiff's due process complaint lacked the type of specificity that he felt would be necessary to avoid a theoretical dismissal motion potentially filed by the defendant district.

14. Based upon IHO Ritzenberg's statements, the plaintiff agreed to voluntarily withdraw his complaint and re-file a new complaint.

15. The plaintiff subsequently submitted a new twenty-five page due process complaint.

16. Upon receipt of the newly filed complaint, IHO Ritzenberg scheduled another pre-hearing conference.

17. Within the context of such conference, IHO Ritzenberg, yet again, voiced his opinion that the plaintiff's complaint lacked specificity, and moreover repeated his opinion that he felt that the plaintiff's claims were subject to dismissal pursuant to the legal doctrine of "res judicata".

18. Consistent with his voiced opinion, IHO Ritzenberg dismissed the plaintiff's complaint.

19. The plaintiff filed an administrative appeal.

20. The New York State Department of Education assigned State Review Officer (SRO), Justyn Bates, to the plaintiff's appeal.

21. SRO Baytes sustained the plaintiff's appeal and remanded the plaintiff's complaint back to IHO Ritzenberg for adjudication.

22. However, upon receiving SRO Baytes' decision, IHO Ritzenberg did nothing.

23. Accordingly, in April 2020, approximately four months after SRO Baytes' issued his remand decision, the plaintiff filed a complaint to the Commissioner of Education, therein demanding that IHO Ritzenberg honor SRO Baytes' decision.

24. Upon receiving notice of the complaint, IHO Ritzenberg finally scheduled a conference.

25. Within the context of such conference, IHO Ritzenberg and the plaintiff argued about how SRO Baytes' decision should be interpreted.

26. In essence the plaintiff's argument with IHO Ritzenberg concerned the scope of relevant facts that should be explored towards establishing the efficacy of the plaintiff's claims.

27. Ultimately, IHO Ritzenberg decided to "limit" the scope of the hearing to considering only those facts that bore upon whether "changes" had occurred either to the plaintiff, or to the defendant district, from the previous academic year, which IHO Ritzenberg felt would therefore theoretically warrant a change in the educational placement of the plaintiff, from the year prior.

28. In accord with his decision, IHO Ritzenberg instructed the parties to submit a written set of facts that related exclusively to the "limited" scope that he had defined.

29. Prior to the commencement of the scheduled due process hearing, such "set of facts" were delivered to IHO Ritzenberg.

30. Towards this end, the plaintiff submitted a factual statement which pointed out that he was prepared to challenge any presumption that IHO Ritzenberg may have had regarding a pre-disposition that the plaintiff was a "severely disabled student".

31. Notably, the reason the plaintiff submitted such "point" as a "factual change" was because IHO Ritzenberg had previously stated that he was compelled to adopt the findings of IHO Leah Murphy, who had presided over the plaintiff's previous year's due process complaint, and who had rendered a decision revealing that she had presumed that the plaintiff was a "severely disabled" student, simply because the plaintiff had not proactively challenged such presumption.[1]

32. Further, the plaintiff respectfully submits that an analysis of IHO Murphy's decision reveals that she simply presumed that the plaintiff was a "severely disabled student", simply because of his intellectual disability.

33. Moreover, the plaintiff respectfully submits that an analysis of IHO Murphy's decision reveals that she never afforded the plaintiff with notice that she was classifying the plaintiff as a "severely disabled student", and moreover that she would be utilizing such classification as a critical factor in her decision making process.[2]

---

[1] In fact, the plaintiff had never been made aware that IHO Murphy was considering the plaintiff to be a "severely disabled person", as she had never revealed that she was considering him to be one. Notably, towards this end, the definition of a "severely disabled person" is specifically defined by the Commissioner of Education, and has significant implications regarding to rights of a student to be placed within a "general education setting".

[2] The Court is familiar with IHO Murphy's presumption of the plaintiff as a "severely disabled student", as this point was extensively argued in a "summary judgment" motion challenging the propriety of IHO Murphy's decision.

4

34. Indeed, the plaintiff respectfully submits that an analysis of IHO Murphy's decision reveals that her presumption became a critical factor in her decision, namely because she ended upon utilizing such classification as the theoretical linchpin towards allegedly justifying her decision to segregate the plaintiff, not only from the general education setting, but also from his home community.

35. In addition, the plaintiff respectfully submits that an analysis of IHO Murphy's decision reveals that she also relied upon her presumption that the plaintiff was a "severely disabled student" to allegedly justify her decision to deny the plaintiff access to the general education curriculum, and to deny him the right to have his academic goals aligned with grade level learning standards, and to further deny him the right to have his present levels of performance (PLEPS) derived from appropriate assessments.

36. In light of the foregoing, the plaintiff respectfully submits that it should be self-evident why he was compelled to articulate the fact that he was prepared to challenge any presumption that he was a "severely disabled student", relevant to the 2019-2020 academic year, as a factual change that had occurred year over year.

37. The due process hearing was held.

38. IHO Ritzenberg issued a decision in favor of the defendant district.

39. As such, the plaintiff was, yet again, forced to file an administrative appeal.

40. SRO Baytes was, yet again, assigned to the plaintiff's case.

41. SRO Baytes issued a decision sustaining the plaintiff's appeal.[3]

---

[3] The first sustained appeal remanded the plaintiff's claims after IHO Ritzenberg wrongfully dismissed the same, and the second appeal rendered a decision in the plaintiff's favor with respect to the substantive merits of the plaintiff's arguments.

5

42. In this regard, SRO Baytes held that the defendant district had violated the Individuals With Disabilities Education Act (IDEA) by failing to provide the plaintiff with a "free and appropriate education" (FAPE) for the 2019-2020 academic year.

43. Notably, SRO Baytes' decision represented the third academic year in which the defendant district has been found guilty of violating the IDEA and the plaintiff's right to receive a FAPE.[4]

44. Equally notable, SRO Baytes' decision highlighted the alarming trend in which IHOs, assigned to the plaintiff's case, have been repeatedly overturned.[5]

45. Nevertheless, despite sustaining the plaintiff's appeal, SRO Baytes denied the plaintiff's request for compensatory education.

46. In light of SRO Baytes' decision, despite being found guilty of violating the plaintiff's IDEA based rights for the 3rd year (2015-2016, 2016-2017 and 2019-2020), the defendant district yet again suffered no damages.[6]

47. SRO Baytes' decision represented the "administrative exhaustion" of the plaintiff's IDEA-based claims relative to the 2019-2020 academic year.

---

[4] IHO Nancy Lederman had issued a decision holding that the defendant district had violated the plaintiff's IDEA based rights for the 2015-2016 and 2016-2017 academic years. As such SRO Baytes decision regarding the 2019-2020 academic year represented the third academic year in which the defendant district had been found guilty of violating the IDEA.

[5] Notably, every IHO assigned to the plaintiff's case has been overturned at some point, and in some cases on multiple occasions. This fact, coupled with the fact that the defendant district has been found to violate the plaintiff's IDEA based rights for three academic years (2015-2016, 2016-2017 and 2019-2020) without suffereing any consequence, provides insight into why New York State sadly remains woefully ranked relative to matters of inclusion, and moreover repeatedly profiles as a "State in Need of Assistance" relative to compliance with the IDEA. (See: xxx). In short, the plaintiff submits that New York's quasi-judicial infrastructure remains complicit in the cultural institutionalization of antiquated educational norms and practices, despite the clear guidance promulgated by both the Federal and State Departments of Education mandating change.

[6] IHO Lederman had denied the plaintiff's claims for compensatory education because he failed to include such request within his due process complaint. Notably, this Court subsequently upheld such denial based upon the theory that since the plaintiff actually "won" the previous due process hearing, he did not actually profile as an "aggrieved party" and thus lacked standing.

## Facts Common to All Causes of Action

48. The defendant district is a public entity, profiling as a public school district, receiving both Federal and State funding, and thus profiles as a public entity.

59. The defendant Board of Education Members are public officials of the defendant school district, therein endowed with promulgating and effectuating the defendant district's practices, policies and procedures.

60. The defendant Superintendent, Michael Radday, is an employee of the defendant district, and effectively acts as the "Chief Executive of the School District", and therefore is either specifically endowed with the authority to promulgate and effectuate the policies, practices and procedures of the defendant district; or in the very least, is the person who profiles as the official who is endowed with the responsibility for simply effectuating the same.

61. The defendant, Mary Anne Ambrosini, is an employee of the defendant district and is the Director of Pupil Services, and therefore profiles as someone who is either endowed with the authority to promulgate the policies, practices and procedures of the defendant district; or in the very least, profiles as a person responsible for effectuating the same.

### *1st Cause of Action: Appeal of Administrative Denial for Compensatory Education*

62. The plaintiff re-asserts paragraphs 1-61.

63. The plaintiff files this "1st Cause of Action" seeking the Court's appellate review of SRO Baytes' administrative decision to deny the plaintiff "compensatory education".

64. Commensurate with the filing of this complaint, the plaintiff has ordered the relevant "administrative record" to be delivered to the Court.

65. Upon information and belief, as the general practice of the Court is to adjudicate "administrative review claims" by way of "summary judgment practice", the plaintiff will

7

contact the Court and request the establishment of an appropriate "summary judgment" motion schedule.

## 2nd Cause of Action: Americans With Disability Act (ADA)

66. The plaintiff re-asserts paragraphs 1-65.

67. As a student born with Down Syndrome, the plaintiff profiles as a qualified individual with a disability, therein meriting the protection of the ADA.

68. The defendant school district is a public entity.

69. The plaintiff herein incorporates by reference and re-asserts the complaints set forth within his due process complaint adjudicated before IHO Ritzenberg.

70. The plaintiff, yet again, notes to the Court that his due process complaint was sustained by SRO Baytes.

71. The ADA holds that no qualified individual may, on the basis of his/her disability, be excluded from participation in, or be denied the benefits of, the services, programs or activities of a public entity.

72. Inter-alia, the plaintiff's due process complaint, as well as the transcripts of his "annual review", reveal how he was denied participation in, and further was denied the benefits of, the services, programs and activities provided by the defendant district, based upon his disability.

73. In particular, the plaintiff submits that the defendant district's "pre-determination", and "summary dismissal" of the plaintiff as a candidate to receive his education, not only within the general education setting, but also within his home community, denied him of the ability to participate in, or receive the benefits of, the services, programs or activities provided by the defendant district.

74. Further, the ADA holds that a public entity may not make selections regarding the situs' to which its services, programs or activities are facilitated, which may tend to have the effect of excluding people with disabilities.

75. Inter-alia, the plaintiff's due process complaint, as well as the transcripts of the plaintiff's "annual review", reveal how he was denied participation in, and further was denied the benefits of, the services, programs and activities provided by the defendant district, based upon his disability.

76. In particular, the plaintiff submits that the defendant district's "pre-determination" and "summary dismissal" of him as a candidate to receive his education, not only within the general education setting, but also his home community, forced his educational placement recommendation to occur within a segregated setting, outside of his home community.

77. In light of the foregoing, the plaintiff submits that the forced designation of a restricted placement and setting thus denied him of the ability to participate in, or receive the benefits of, the services, programs or activities of the defendant district.

78. Further, the ADA holds that a public entity must make reasonable modifications in its policies, practices and procedures, so as to avoid discrimination.

79. In this regard, the plaintiff submits, inter-alia, that his due process complaint, as well as his "annual review" transcripts, reveals how the defendant district failed to modify its policy, practice or procedure of either "outsourcing" all possible educational cohorts for the plaintiff, or its policy, practice or procedure of insisting on the provision of educational services within a class setting of multiple students.

80. Further, the ADA holds that a public entity may not create or impose eligibility criteria for the provision of its programs, services, or activities that tends to screen out disabled people.

81. In this regard, the plaintiff submits, inter-alia, that his due process complaint and his "annual review" transcripts reveal how the defendant district imposed the unjustified criteria for a requiring a physical cohort, as being absolutely necessary for purposes of being able to facilitate an education for the plaintiff.[7]

82. Finally, the ADA holds that a public entity may not retaliate against a person with a disability because such person has opposed or challenged acts of the public entity that violated the ADA.

83. In this regard, the plaintiff submits that, inter-alia, his due process complaint and his "annual review" CSE transcript, reveals how the defendant district "pre-determined" his placement and "summarily dismissed" even the possibility of educating him within the defendant district, as retaliation for the plaintiff's ongoing legal battle challenging the defendant district's discriminatory practices.

84. The defendant district's actions have discriminated against the plaintiff due to his disability.

85. The defendant district's actions, particularly its "pre-determination" and "summary dismissal" of the plaintiff, evidence a callous indifference to the plaintiff's well-being.

86. The defendant district's actions have been inflicted in retaliation against the plaintiff for challenging the defendant district's historic and discriminatory practices.

---

[7] The plaintiff points out the insidious nature of the defendant district's historic and discriminatory practice of "outsourcing" every single post-elementary aged "alternately assessed special education student" that ever came its way. Indeed, such discriminatory practice has enabled the defendant district to "weaponize" its discriminatory practice by stating, year over year, that it has no students, when the defendant district itself remains the party responsible for creating such infirmity.

87. Based upon the defendant district's ADA violations, the plaintiff, A.K., has suffered an educational deprivation, and the plaintiffs, at large, have all suffered emotional, physical, and psychological damages.

### 3rd Cause of Action: Section 504 of the Rehabilitative Act (504)

88. The plaintiff re-asserts paragraphs 1-87.

89. As evidenced by SRO Baytes' decision, the defendant district was found guilty of violating the IDEA for the 2019-2020 academic year.

90. The plaintiff herein incorporates by reference his due process complaint, as well as his "annual review" transcripts, for purposes of illuminating the defendant district's violations of 504.

91. 504 holds that no qualified individual shall, solely on the basis of his/her disability, be excluded from the participation in, or be denied the benefit of, or be subjected to discrimination by a public entity receiving federal funding.

92. The plaintiff submits that paragraphs 1-87 set forth how the defendant district has violated 504.

93. Based upon the defendant district's 504 violations, the plaintiff, A.K. suffered an educational deprivation, and the plaintiffs, at large, have all suffered emotional, physical and psychological damages.

### 4th Cause of Action: 42 U.S.C. 1983 – Equal Protection (1983)

94. The plaintiff repeats the allegations set forth within paragraphs 1-93.

95. As a disabled person, the plaintiff has a federal right to receive the protections afforded by the IDEA.

96. Specifically, pursuant to the IDEA, the plaintiff has a right to receive a FAPE.

97. Further, pursuant to the IDEA, the plaintiff has a right to receive a FAPE that is "appropriately ambitious".

98. Pursuant to the Constitution of the United States, the plaintiff has a right to "equal protection".

99. In accord with the foregoing, the plaintiff has the right to receive the protections afforded by the IDEA in an equal fashion to other "similarly situated" disabled persons.

100. The plaintiff profiles as an "alternately assessed special education student".

101. The plaintiff submits that all "alternately assessed special education students" inherently share similar student profiles and are thus "similarly situated".

102. Presently, there are three "alternately assessed special education students" who are being afforded an education at the secondary level within the defendant district.

103. The plaintiff, despite also being an "alternately assessed special education student", is not one of these three referenced students.

104. The plaintiff submits that the fact that these three "alternately assessed special education students", as well as the plaintiff, are all post-elementary aged students, profiles as further evidence that they are "similarly situated".

105. The plaintiff submits that a comparative analysis of his Independent Education Plan (IEP), as compared to the IEPs of each of the referenced three "alternately assessed special education students", will reveal further inherent similarities existing between all of them.

106. The plaintiff submits that the inherent similarities evidenced within a comparative analysis of the IEPs of all of the referenced post-elementary aged "alternately assessed special education students" will further reveal how all of these students are "similarly situated".

107. The defendant district allocates its special education resources towards educating the these three referenced "alternately assessed special education students", within the defendant district.

108. Inter-alia, the plaintiff submits that his due process complaint, as well as his "annual review" transcripts, reveal how the defendant district has refused to do so for the plaintiff.

109. As such, the plaintiff submits that the defendant district has failed to treat the plaintiff in an equal manner to those similarly situated "alternately assessed special education students", by failing to apply the protections afforded by the IDEA equally.

110. In light of the foregoing, the plaintiff submits that he has been treated as a "class of one".

111. As previously stated herein, and as evidenced by SRO Baytes' decision, the defendant district has already been found guilty of violating the plaintiff's rights as protected by the IDEA, relevant to the 2019-2020 academic year.

112. The plaintiff submits that the disparate treatment that he has suffered has been predicated upon the defendant district's alternative motives of discrimination, callous indifference, and retaliation.

113. The plaintiff submits that the defendant district refuses to treat the plaintiff equally, so as to inflict punishment and retaliation upon the plaintiff for commencing a lawsuit against it and for challenging the defendant district's history of effectuating discriminatory practices and policies.

114. In doing so, the plaintiff submits that the defendant district has displayed a callous indifference for his well-being and that the defendant district's actions profile as being egregious and unconscionable.

115. Based upon the defendants' violations of 1983, the plaintiffs have all suffered emotional, physical and psychological damages.

**WHEREFORE**, the plaintiffs respectfully request the Court to reverse the administrative decision of SRO Baytes which denied the plaintiff "compensatory education" Further, the plaintiffs respectfully request the Court to award all of the defendants, compensatory and punitive damages – to the extent applicable at law. Finally, the plaintiffs respectfully request any further relief that the Court may deem equitable under the circumstances.

Date: 9/29/20

x. _____
Christian Killoran, Plaintiff and Father of Plaintiff, A.K.

Date: 9/29/20

x. _____
Terrie Killoran, Plaintiff and Mother of Plaintiff, A.K.

# VERIFICATION

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF SUFFOLK    )

TERRIE KILLORAN, being duly sworn, deposes and says that she is the Plaintiff in the instant action and has read the foregoing COMPLAINT deponent knows its content and knows that it is true to the best of deponent's knowledge, except as to those matters stated to be upon information and belief, and as to those matters deponent believes them to be true.

_____
TERRIE KILLORAN

Sworn to before me this
29th day of September, 2020.

_____
NOTARY PUBLIC

ANDREA PITNEY
Notary Public State of New York
Suffolk County No. 01PI6044574
Commission Expires July 10, 2022

# VERIFICATION

STATE OF NEW YORK )
                              ) ss:
COUNTY OF SUFFOLK )

CHRISTIAN KILLORAN, being duly sworn, deposes and says that he is the Plaintiff in the instant action and has read the foregoing COMPLAINT deponent knows its content and knows that it is true to the best of deponent's knowledge, except as to those matters stated to be upon information and belief, and as to those matters deponent believes them to be true.

_____
CHRISTIAN KILLORAN

Sworn to before me this
29th day of September, 2020.

_____
NOTARY PUBLIC

ANDREA PITNEY
Notary Public State of New York
Suffolk County No. 01PI6044574
Commission Expires July 10, 2022

...ptons Blvd, NY 11978

United States District Court
c/o: Pro-Se Office
att: Honorable Joanna Seybert
100 Federal Plaza
Central Islip, NY 11722

NEOPOST
FIRST-CLASS MAIL
$002.00
09/29/2020 ZIP 11978
042L14820399
US POSTAGE

USMS

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 05 2020 ★
LONG ISLAND OFFICE