UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
CHRISTIAN KILLORAN,
on behalf of his son, A.K.;
CHRISTIAN KILLORAN;
and TERRIE KILLORAN,

                Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                               20-CV-4763(JS)(SIL)

    -against-

WESTHAMPTON BEACH SCHOOL
DISTRICT; SUZANNE MENSCH
and JOYCE DONNESSON,
as Board of Education Members;
MICHAEL RADDAY, as Superintendent;
MARY ANN AMBROSINI,
as Director of Pupil Personnel
and CSE Chairperson,

                Defendants.
---------------------------------x
For Plaintiffs:    Christian Killoran, Esq., <u>Pro Se</u>
                  132-13 Main Street
                  Westhampton Beach, New York  11978


For Defendants:    Anne C. Leahey, Esq.
                  Anne Leahey Law, LLC
                  17 Dumplin Hill Lane
                  Huntington, New York  11743


SEYBERT, District Judge:

        <u>Pro se</u> plaintiffs Christian Killoran ("Mr. K" or "the parent") and Terrie Killoran ("Mrs. K") (together, "the Plaintiffs"), individually and as parents to A.K., a child with Down Syndrome, commenced this action against defendants Westhampton Beach School District, ("Westhampton" or the "District"), Suzanne M. Mensch, and Joyce L. Donnesson (together,

1

the "School Board"), Michael Radday, ("the Superintendent"), Mary Ann Ambrosini, ("Director of Pupil Personnel," and collectively with Westhampton, the School Board, and the Superintendent, the "Defendants").   Plaintiffs' Complaint seeks review of the September 16, 2020 administrative decision of state review officer ("SRO") Justyn P. Bates ("SRO Bates") reversing the August 7, 2020 determination of independent hearing officer ("IHO") Kenneth S. Ritzenberg ("IHO Ritzenberg") that the District provided A.K. with a free and appropriate education ("FAPE") in the least restrictive environment ("LRE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S. C. 1400 <u>et seq.</u>, for the 2019-2020 academic year but denying Plaintiffs compensatory education. (Complaint ("Compl."), ECF No. 1.)   It also purports to allege violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>, and Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 701 <u>et seq.</u>   (<u>Id.</u>)

Currently pending before the Court is Plaintiffs' motion for partial summary judgment (hereafter, the "Motion") (ECF No. 15) with respect to the SRO's denial of compensatory education. After careful consideration, for the reasons stated herein, Plaintiffs' Motion is **DENIED**.

[Remainder of page intentionally left blank.]

2

<u>BACKGROUND</u>

This action is one in a series of civil rights litigation brought by Plaintiffs against Westhampton concerning the education of Plaintiffs' son, A.K.; it arises out of Defendants' development of A.K.'s individualized education plan ("IEP") and placement for the 2019-2020 academic year.   (<u>See</u> Compl.)   The Court assumes familiarity with the background of this case, which is chronicled in its various prior Orders.   <u>See, e.g.</u>, <u>Killoran v. Westhampton Beach UFSD</u>, No. 19-CV-6663, 2020 WL 4740498, at *1-3 (E.D.N.Y. June 24, 2020), <u>report and recommendation adopted</u>, 2020 WL 4743189 (E.D. N.Y. July 27, 2020).   Thus, the Court confines its analysis to the relevant issues presented in Plaintiffs' Motion.

I.   <u>Statutory Framework of IDEA Cases</u>

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."   20 U.S.C. § 1400(d)(1)(A).   Under the IDEA, states receiving federal funds are required to comply with extensive procedural requirements to ensure that all children with disabilities receive a FAPE.   <u>See</u> <u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176, 180-81 (1982).

"The particular educational needs of a disabled child and the services required to meet those needs must be set forth at

3

least annually in a written IEP." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998) (citation omitted). "In New York, local committees on special education ("CSE") are responsible for determining whether a child should be classified as eligible for educational services under [the] IDEA and, if so, for developing an appropriate IEP for that child." S.H. v. N.Y.C. Dep't of Educ., No. 09-CV-6072, 2011 WL 609885, at *1 (S.D.N.Y. Feb. 18, 2011) (citing Walczak, 142 F.3d at 123). The IDEA sets forth procedural and substantive requirements for IEPs, see 20 U.S.C. § 1414, but "does not itself articulate any specific level of educational benefits that must be provided through an IEP," Walczak, 142 F.3d at 130. The education provided must "be sufficient to confer some educational benefit upon the handicapped child," Rowley, 458 U.S. at 200, but it need not "provide[ ] everything that might be thought desirable by loving parents," Walczak, 142 F.3d at 132 (internal quotation marks omitted).

"Parents who believe that their school district has failed to provide their child with a [FAPE]--due to an inadequate IEP or otherwise--may file a complaint with the state educational agency and request an impartial due process hearing before a hearing officer." S.H., 2011 WL 609885, at *1 (citing Walczak, 142 F.3d at 123). Either party may appeal an adverse decision to the appropriate state agency. Id. "Only after these administrative remedies have been exhausted may an aggrieved party

appeal to a federal or state court, which may then grant appropriate relief." M.R. v. S. Orangetown Cent. Sch. Dist., No. 10-CV-1800, 2011 WL 6307563, at *12 (S.D.N.Y. Dec. 16, 2011) (citing 20 U.S.C. § 1415(i)(2)(A)). "One of the matters that must be administratively exhausted in order to be reviewed in a federal court is the issue of remedies, including whether a child should receive compensatory education." Id.

II. Factual Background[1]

On September 5, 2019, unsatisfied with the CSE's IEP for A.K. for the 2019-2020 academic year, Mr. K filed a due process complaint alleging that the District failed to provide A.K. with a FAPE. (Sept. 5, 2019 Due Process Complaint ("DPC"), ECF No. 16-3, at 4-6.) Following a prehearing conference, on or about October 15, 2019, the parent submitted an undated amended due process complaint. (Amended Due Process Complaint ("ADPC"), ECF No. 16-3, at 7-34.) Both due process complaints indicated that Mr. K was objecting to three CSE meetings conducted in June, July, and August 2019, respectively, and the resultant IEP for the 2019-2020 academic year. (See DPC; ADPC.) Without conducting an impartial hearing, in a November 15, 2019 decision, IHO Ritzenberg granted

---

[1] The following facts are taken from the Complaint, the parties' submissions and the underlying administrative record (see ECF No. 16 through ECF No. 16-5), and are undisputed unless otherwise noted. For ease of reference, the Court cites to the Electronic Case Filing System ("ECF") pagination.

the District's motion to dismiss the ADPC based upon <u>res judicata</u>, sufficiency of the due process complaint notice, and jurisdiction of the IHO. (September 16, 2020 SRO Bates Decision ("SRO Decision"), ECF No. 16, at 8.)

Mr. K appealed the IHO's dismissal to the N.Y.S. Education Department's Office of State Review ("OSR") solely with respect to the <u>res judicata</u> determination. (<u>Id.</u>) In a decision dated December 26, 2019, SRO Bates found that IHO Ritzenberg had "prematurely dismissed the parent's claims without an evidentiary hearing." (<u>Id.</u>) Though SRO Bates acknowledged the similarity of the parent's claims to those raised previously and resolved for the 2018-19 academic year, he pointed out that the parent's current claims related to the 2019-20 academic year; therefore, he remanded the matter to the IHO for further adjudication on the issue of the appropriateness of A.K.'s IEP specifically for the 2019-20 academic year. (<u>Id.</u>) Nevertheless, SRO Bates recognized:

> [I]n considering the parent's claim relevant to the 2019-20 school year, it was "important to take into account prior school year determinations and the extent to which [A.K.]'s needs have changed, the progress [A.K.] has made since his previous IEP was developed, and the extent to which the [D]istrict's available continuum of programs ha[s] changed during the intervening period, if at all."

(<u>Id.</u>) SRO Bates directed the District to be prepared to defend against the parent's alleged claims "by presenting evidence

regarding why the CSE made the recommendation that it did and whether [A.K.]'s needs and progress remained constant such that a placement recommendation similar to prior school years continued to be appropriate for the 2019-20 school year." (Id. at 9 (citation omitted).)

A. IHO Decision on Remand

On remand, IHO Ritzenberg limited the evidentiary hearing to factual matters related to whether A.K.'s condition had changed since the prior administrative decisions for the 2018-19 academic year "to merit consideration of a different placement," or if the District's offerings had changed since the prior year so that it could now accommodate A.K.[2] (Aug. 7, 2020 IHO Ritzenberg Decision ("IHO Decision"), ECF No. 16, at 43.)  In an August 7, 2020 decision, IHO Ritzenberg granted the District's motion to dismiss the ADPC in its entirety finding that the educational program and services recommended by the District's CSE for A.K. for the 2019-2020 academic year were appropriate. (Id. at 70—72.)

---

[2]   In the prior February 20, 2019 administrative decision, referenced by IHO Ritzenberg, IHO Leah L. Murphy ("IHO Murphy") found that A.K. was provided a FAPE for the 2018-19 academic year. (See SRO Decision at 10, n.8.)  This decision was affirmed on appeal to SRO Sarah L. Harrington (id.), and upheld by this Court on October 11, 2021.  Killoran v. Westhampton Beach Sch. Dist., 19-CV-3298, 2021 WL 4776720 (E.D.N.Y. Oct. 11, 2021).

In the IHO Decision, IHO Ritzenberg highlighted the parent's challenge to A.K.'s classification as a "severely disabled student," an issue not raised in either of his due process complaints. (Id. at 46-47.)  According to the IHO, the parent failed "to submit a single salient fact regarding whether [A.K.]'s needs have changed, the progress [A.K.] has made since his previous IEP was developed and the extent to which the District's available continuum of programs have changed during the intervening period, if at all since IHO Murphy's determination." (Id.) (internal quotations omitted).  The IHO found that the parent's arguments appeared to be an appeal of IHO Murphy's prior decision with respect to the 2018-19 academic year, which IHO Ritzenberg had no authority to review and which, in fact, had already been appealed and upheld by an SRO.  (Id. at 47.)

On the other hand, the IHO noted that the District argued that it offered A.K. a FAPE for the 2019-20 academic year on the basis that his needs had not changed since the previous IEP was developed, and that there had not been any modifications to the District's curriculum during the 2019-20 academic year that would enable it to provide a suitable program for A.K. in the District. (Id. at 49.)  However, IHO Ritzenberg pointed out that, although the District submitted an IEP dated December 18, 2019 for A.K. from the 2019-20 academic year, neither party chose to submit the

IEP from the prior academic year, "which could arguably demonstrate that [A.K.]'s needs have or have not changed."  (Id. at 51.)

The IHO concluded that the District had met its burden of demonstrating that there were no changes to A.K.'s needs or conditions, or to the District's programs since IHO Murphy's 2019 Decision, but that the parent failed to provide "any factual allegations whatsoever that A.K.'s needs have changed from the 2018-19 school year."  (Id. at 70-71.)  Alternatively, the IHO found that "[e]ven if the substantive issues [ ] were to be determined on the factual evidence [submitted], . . . [he] would find. . . that the District had provided A.K. with a FAPE in the LRE."  (Id. at 71.)

B. SRO Decision

Once more, Mr. K administratively appealed the IHO Decision to the OSR, asserting that IHO Ritzenberg erred in finding that the District offered A.K. a FAPE for the 2019-20 academic year.  (SRO Decision at 6.)  He requested that the IHO Decision be overturned and that his "claims be sustained or alternatively remanded for proper adjudication."  (Id. at 16.)  More specifically, Mr. K objected to the "IHO's adoption of legal conclusions from prior matters involving [A.K.] and his instructions to limit the scope of the impartial hearing to the question of whether [A.K.'s] needs or the District's offerings had changed since the last proceeding."  (Id. at 22.)  Additionally,

he again challenged the IHO's description of A.K. as "severely disabled."[3]  (Id.)

   In his September 16, 2020, lengthy and detailed decision, SRO Bates found that although the IHO's adoption of legal principles from prior matters between the parties was not legal error, the IHO inappropriately shifted the burden of production from the District to the parent regarding whether the District offered A.K. a FAPE for the 2019-20 academic year.  (Id. at 22-23, 26.)  The SRO noted that in his remand instructions, he had directed the District to present evidence "regarding why the CSE made the recommendation that it did and whether [A.K.]'s needs and progress remained constant such that a placement recommendation similar to prior school years continued to be appropriate for the 2019-20 school year."  (Id. at 26 (emphasis eliminated).)  Though the IHO acknowledged that neither party submitted any facts demonstrating whether A.K.'s needs had changed from his prior 2018-19 IEP, the SRO noted that "the IHO erroneously faulted the parent for gaps in the evidentiary record rather that the [D]istrict."[4]

---

[3]  The SRO rejected the parent's claim that the IHO should have considered whether A.K. is a "severely disabled student" noting, among other reasons, that the parent had not raised this issue in either of his due process complaints, and, in fact, acknowledged that A.K. was "classified as an alternately assessed special education student."  (Id. at 22-24.)

[4]  Although the District acknowledged at the hearing that the parent was challenging three CSE meetings held in June, July and August 2019 for A.K.'s annual review, it failed to enter any

(Id. at 28.)  SRO Bates concluded that the District had failed to meet its evidentiary burden to defend the IEP and program that it recommended for A.K. for the 2019-20 academic year and, therefore, denied A.K. a FAPE.  (Id. at 27-29.)

As to the parent's requested relief, SRO Bates noted that both due process complaints requested compensatory education and that the District be required to create a hybrid program for A.K.  (Id. at 29.)  However, in his request for review, the parent did not request any specific relief but merely asked that "the IHO decision be overturned and his claims sustained."  (Id.) Therefore, SRO Bates concluded that the parent had abandoned his request for an order requiring the District to hire an expert to supervise the implementation of a hybrid program, and further noted that it has been previously decided that the District is not required to create such a program for A.K.  (Id. at note 40.) Thus, the only potential relief that SRO Bates considered was compensatory education, which he found was not warranted.  (Id. at 29.)

Specifically, SRO Bates acknowledged that an award of compensatory education should "aim to place the student in the position he or she would have been in had the [D]istrict complied with its obligations under the IDEA."  (Id. at 30 (citing

---

information regarding any of these meetings into the hearing record.  (Id. at 27.)

Newington, 546 F.3d at 123).)   However, he noted that A.K. had been receiving special education and related services through his pendency placement pursuant to an agreement between the parties. (Id.)   In accordance with that agreement, A.K. was receiving related services daily in the morning at an in-district school and instruction from a special education teacher in the afternoons at home or in the local public library.   (Id.)   SRO Bates reasoned that "[b]ased on [A.K.]'s receipt of pendency services in a 1:1 setting, he "received his special education services in arguably, the most supportive and intensive settings available on the continuum of special education placements."   (Id. at 31.)   He further stated that the hybrid nature of the pendency services permitted A.K. to receive related services in the school setting. (Id.)   Additionally, SRO Bates found that the hearing record reflected that during the 2019-20 academic year, A.K. "worked on approximately 21 annual goals and reportedly made gradual or satisfactory progress towards most of his IEP goals and achieved several short-term objectives by April and May 2020."   (Id.) Moreover, A.K. received educational consultant services, and his parents participated in monthly parent counseling and training. (Id.)   Based upon the hearing record and the parent's failure to identify the specific relief sought in the request for review, it was "altogether unclear" what compensatory education services "could place [A.K.] in the position that he would have been but

12

for the denial of a FAPE." (Id.)  Therefore, SRO Bates concluded that "given the nature of the parent's claims and the services owed to [A.K.] pursuant to pendency during the 2019-20 school year, there [was] no basis in the hearing record for an award of compensatory education services." (Id. at 31-32.)

## C. The Instant Action

On October 5, 2020, Plaintiffs commenced this action seeking review of the SRO's Decision denying compensatory education. (See Compl.)  Additionally, Plaintiffs asserted claims under the ADA and the Rehabilitation Act. (Id.)  On January 13, 2021, Plaintiffs filed the instant Motion with respect to the SRO's denial of compensatory education.  On February 11, 2021, Defendants filed their opposition to the Motion. (Opp'n, ECF No. 17.) On February 22, 2021, Plaintiffs filed a reply brief in further support of their Motion. (Reply, ECF No. 18.)

DISCUSSION

## I. Legal Standard of Review

A district court's role in "'reviewing state educational decisions under the IDEA is circumscribed.'" T.Y. & K.Y. ex rel. T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007).  "Although the district court must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence,' Mrs. B.

13

v. Milford Bd. of Educ., 103 F.3d 1114, 1120 (2d Cir. 1997), the
Supreme Court has cautioned that such review 'is by no means an
invitation to the courts to substitute their own notions of sound
educational policy for those of the school authorities which they
review.'"  Gagliardo, 489 F. 3d at 112-13 (quoting Rowley, 458
U.S. at 206).  Indeed, the Court "'must give due weight to the
administrative proceedings, mindful that the judiciary generally
lacks the specialized knowledge and experience necessary to
resolve persistent and difficult questions of educational
policy.'"  T.Y., 584 F.3d at 417 (quoting A.C. ex rel. M.C. v. Bd.
of Educ., 553 F.3d 165, 171 (2d Cir. 2009)).

        The Court also acknowledges that IDEA claims can often
be resolved upon summary judgment motion because, although the
Court is empowered to hear new evidence if necessary, the Court
has the benefit of the administrative record, and it must afford
a certain degree of deference to the administrative findings.
T.Y., 584 F.3d at 418.  In fact, "[u]nlike with an ordinary summary
judgment motion, the existence of a disputed issue of material
fact will not necessarily defeat a motion for summary judgment in
the IDEA context."  J.S. v. Scarsdale Union Free Sch. Dist., 826
F. Supp. 2d 635, 658 (S.D.N.Y. 2011) (citations omitted).
"Instead, summary judgment in IDEA cases such as this is 'in
substance an appeal from an administrative determination, not a

summary judgment.'"  Id. (quoting Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005)).

II.  Subject Matter Jurisdiction

As a threshold matter, Defendants contend that this Court lacks subject matter jurisdiction over Plaintiffs' appeal of the SRO's denial of compensatory education because Plaintiffs failed to "specifically request compensatory education or set forth the specific educational services required to compensate [A.K.] for an educational deprivation" in their request for review. (See Opp'n at 13-16.)  The Court disagrees.

It is well-settled that the IDEA requires that an aggrieved party exhaust all available administrative remedies prior to appealing a case to federal court.  See 20 U.S.C. § 1415(i)(2)(A).  In New York, exhaustion requires engaging in both an initial IHO hearing and an appeal to the SRO.  See R.S. v. Bedford Cent. Sch. Dist., 899 F. Supp. 2d 285, 288 (S.D.N.Y. 2012). Hence, "disputes related to the education of disabled children" are channeled "into an administrative process that c[an] apply administrators' expertise in the area and promptly resolve grievances."  Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 245-46 (2d Cir. 2008) (quoting Polera v. Bd. of Educ., 288 F.3d 478, 487 (2d Cir. 2002)).  A party's failure to exhaust administrative remedies deprives the party of the right to appeal

a case in federal court because it "deprives the court of subject matter jurisdiction." Id. at 246 (citing Polera, 288 F.3d at 483.)

Under New York state regulations, when an aggrieved party seeks review by an SRO, he must file a request for review which must "clearly specify the reasons for challenging the [IHO]'s decision, identify the findings, conclusions and orders to which exceptions are taken, . . . , and shall indicate what relief should be granted by the [SRO]." N.Y. Comp. Codes R. & Regs. tit. 8, § 279.4(a) (2017). Any issue not so identified shall be deemed abandoned and will not be addressed by the SRO. Id. § 279.8(c)(4).

Here, in his request for review, the parent claimed that the IHO "erred in concluding that 'back-end' compensatory education would not be an appropriate remedy for the violations committed by the respondent district." (Request for Review, ECF No. 16, at 88.) As discussed, the parent requested that "IHO Ritzenberg's decision be overturned" and that the parent's claims be "sustained or alternatively remanded for appropriate adjudication." (Id. at 90.)

Though the request for review appears to be procedurally deficient under state regulations, the Court has previously found such procedural errors are insufficient to constitute exhaustion failure. See Killoran, 2021 WL 4776720, at *7 (citing Killoran, 2020 WL 4740498, at *4 (recommending denying District's motion to dismiss parents' IDEA claim for lack of subject matter jurisdiction

16

where parents' administrative appeal was dismissed in part because of their failure to comply with practice regulations), report and recommendation adopted, 2020 WL 4743189 (E.D.N.Y. July 27, 2020))). "Whereas courts in this Circuit have deemed plaintiffs' procedural errors, 'such as failure to timely serve or file a petition for SRO review[,]' a failure to exhaust administrative remedies, procedural violations of 'form requirements' do not similarly constitute an exhaustion failure." Killoran, 2020 WL 4740498, at *5 (citing J.E. v. Chappaqua Cent. Sch. Dist., No. 14-CV-3295, 2015 WL 4934535, at *4 (S.D.N.Y. Aug. 17, 2015) (noting that SRO "judgments rendered solely on the basis of easily corrected procedural errors or mere technicalities are generally disfavored" and rejecting argument that plaintiffs had failed to exhaust administrative remedies where the SRO had dismissed their appeal for procedural violations of form requirements) (cleaned up)).

Moreover, in his decision, SRO Bates noted the procedural inadequacy of the parent's request for review which did not set forth the specific educational services required to compensate A.K. for the denial of a FAPE for the 2019-20 academic year, but simply requested that "the IHO decision be overturned and his claims sustained." (SRO Decision at 29.) Nonetheless, SRO Bates addressed the issue of compensatory education noting that the parent's due process complaints had requested this

17

specific relief.[5]   (Id.)   In light of SRO Bates' substantive
analysis and determination regarding compensatory education, it
would be "illogical to conclude that Plaintiffs have failed to
exhaust their administrative remedies when their claims were fully
assessed on the merits by the SRO." J.E., 2015 WL 4934535, at *5.
Accordingly, despite the procedural defect in the parent's request
for review, the Court is not precluded from asserting subject
matter jurisdiction over Plaintiffs' appeal.

III. Compensatory Education

        Compensatory education is "prospective equitable relief"
that requires a school district to fund additional educational
services "as a remedy for any earlier deprivations in a child's
education." Somoza v. N.Y.C. Dep't of Educ., 538 F.3d 106, 109
n.2 (2d Cir. 2008) (citation omitted). This form of relief "serves
to compensate a student who was actually educated under an
inadequate IEP and to catch-up the student to where he should have
been absent the denial of a FAPE" S.A. ex rel. M.A.K. v. N.Y.C.
Dep't of Educ., No. 12-CV-0435, 2014 WL 1311761, at *7 (E.D.N.Y.
Mar. 30, 2014) (internal quotation marks omitted); see also P. ex
rel. Mr. and Mrs. P. v. Newington Bd. of Educ., 546 F.3d 111, 122
(2d Cir. 2008) (noting that "compensatory education is an available

---

[5]   The Court notes that the scope of the inquiry of the IHO, and
therefore also of the SRO and this Court, is limited to matters
either raised in the Plaintiffs' due process complaint or agreed
to by the Defendants.  See 20 U.S.C. § 1415(f)(3)(B).

option under the [IDEA] to make up for the denial of a [FAPE]").[6]
An award of compensatory education "must be reasonably calculated
to provide the educational benefits that likely would have accrued
from special education services the school district should have
supplied in the first place."  Doe v. E. Lyme Bd. of Educ., 790
F.3d 440, 457 (2d Cir. 2015) (quoting Reid ex rel. Reid v. Dist.
of Columbia, 401 F.3d 516, 524 (D.C. Cir. 2005)).

        Plaintiffs argue that because SRO Bates "sustained"
their administrative appeal and found that the District denied
A.K. a FAPE for the 2019-20 academic year, in effect, he sustained
all of Plaintiffs' assertions and, therefore, this Court should
find that A.K. suffered a "significant educational deprivation"
entitling him to compensatory education.  (Pls. Mot. at 4-5, 15-
16.)  Plaintiffs are mistaken.

        It is well-settled that the finding of a FAPE violation
does not, without more, trigger an entitlement to compensatory
education.  See M.C. v. Lake George Cent. Sch. Dist., No. 10-CV-
1068, 2012 WL 3886159, at *6 (N.D.N.Y. Sept. 6, 2012) ("While the

---

[6] "Before awarding compensatory education for a student older than
twenty-one, a court must find a gross violation of the student's
right to a FAPE; however, whether the same prerequisite exists to
awarding compensatory education for a younger student is an open
question."  S.A., 2014 WL 1311761, at *7 (citation omitted).  A.K.
was born on September 2, 2002, making him 17-years-old at the time
of the filing of his due process complaints.  (See IHO Decision at
55.)  Because the Court finds that compensatory education is not
warranted here, it need not reach this issue.

issue of whether Defendant fulfilled its obligations under the IDEA is pertinent to an award of compensatory education, whether to award compensatory education as a result of the failure to comply with the IDEA is a distinct issue.")  Notably, SRO Bates' finding of a FAPE violation was not based on any substantive evidence related to the sufficiency of A.K.'s IEP, but rather was based on the District's failure to satisfy its burden of proof to demonstrate that it offered A.K. a FAPE for the 2019-20 academic year.  (See SRO Decision at 28-29 (finding the District failed to enter into the hearing record "any information regarding [the] three CSE meetings . . . and the resultant IEP(s) from those meetings" that formed the basis of Plaintiffs' due process complaints); see id. at 27.)

Moreover, compensatory education is not warranted here because throughout the administrative proceedings regarding the 2019-20 academic year, A.K. was receiving his special education and related services pursuant to a pendency agreement between the parties.  (See SRO Decision at 30.)  Pursuant to that agreement, A.K. received related services within the District daily in the mornings and then 1:1 special education instruction at the local library in the afternoons.  (Id.; see also id. at note 41.) Plaintiffs contend that they were "forced to abide by the 'pendency arrangement'" when A.K.'s FAPE rights were denied and that "a 'pendency placement' tolls a school district's obligations to

pursue compliance with the IDEA in perpetuity." (Pls. Mot. at 9-10.) However, Plaintiffs misconstrue the purpose of pendency placement.

The IDEA's stay-put provision provides in relevant part that "during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415] . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The term "then-current educational placement" in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP. Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 532 (2d Cir. 2020); Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 697 (S.D.N.Y. Mar. 14, 2006) (noting that the stay-put provision is applicable to pendency placement that arises from an agreement between the parties) (citation omitted). The stay-put provision exists to "provide stability and consistency in the education of a student with a disability," Arlington, 421 F. Supp. 2d at 696, and to maintain "the educational status quo while the parties' dispute is being resolved." T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014).

Here, the pendency placement was the result of an agreement between the parties during the administrative process regarding the 2016-17 academic year. (Opp'n. at 27-28; SRO

Decision at 30.)   In 2019, the parties amended the pendency agreement to allow for special education to take place in the local library instead of A.K.'s home.  (Opp'n at 27-28.)  This agreement has been referenced as A.K.'s pendency placement in numerous administrative decisions and was most recently upheld by this Court.  See Killoran v. Westhampton Beach Sch. Dist., No. 20-CV-4121, 2022 WL 866816, (E.D.N.Y. March 22, 2022).[7]  In that case, Mr. K sought compensatory education damages for a purported violation of the stay-put provision of the IDEA but conceded that until the onset of the COVID-19 pandemic, A.K. was receiving his instruction in accordance with the pendency placement agreement. Id. at *4.  The Court found that the District's provision of A.K.'s special education instruction at home, in light of the library's closure due to the COVID-19 pandemic, was not a violation of the stay-put provision because the District was complying with the terms of the parties' pendency placement agreement. Id. at *6. Therefore, the Court dismissed Plaintiffs' IDEA claim.  Id.

Plaintiffs now contend that pendency placement is limited to "situs" and has nothing to do with the "substantive appropriateness" of instruction.  (Pls. Mot. at 8, 17-18.) However, SRO Bates considered the substantive adequacy of A.K.'s

---

[7]  The Court notes that Mr. K, the sole plaintiff in that action, has just appealed that decision.  See Killoran, No. 20-CV-4121, Notice of Appeal, ECF No. 28 (E.D.N.Y. Mar. 29, 2022).

pendency education and found that A.K. "received his special education services in arguably, the most supportive and intensive settings available on the continuum of special education placements." (SRO Decision at 31.)  In part, he based his decision on the "gradual or satisfactory progress" A.K. made towards most of his IEP goals and his achievement of several short-term objectives.  (Id. at 31 (citing A.K.'s 2019-2020 IEP Measurable Annual Goals, ECF No. 16-4 pp. 12-18, and A.K.'s May 9, 2020 Quarterly Progress Report, ECF No. 16-4 pp. 34-56).)  Further, as SRO Bates noted, the hybrid nature of the pendency services permitted A.K. to receive related services in the school setting and 1:1 special education instruction.  (Id.)

Based upon the record before it, which clearly substantiates the SRO's well-reasoned decision regarding A.K.'s receipt of his special education services, the Court finds no reason to disturb that decision.  See M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers, 231 F.3d 96, 104 (2d Cir. 2000) ("An assessment of educational progress is a type of judgment for which the district court should defer to the SRO's educational experience, particularly where . . . the district court's decision [is] based solely on the record that was before the SRO), abrogated in part on other grounds, Schaffer v. Weast, 546 U.S. 49 (2005); M.M. v. N.Y.C. Dep't of Educ., No. 15-CV-5846, 2017 WL 1194685, at *6 (S.D.N.Y. Mar. 30, 2017) ("[O]verturning the SRO's well-

reasoned decision would improperly 'substitute [the Court's] own notions of sound educational policy for those of the school authorities which [it] review[s].'" (quoting M.H., 685 F.3d at 240; further citation omitted)).  Indeed, the entire purpose underlying the IDEA is remedial and compensatory education is meant "to make up for prior deficiencies." Reid, 401 F.3d at 522.  This Court agrees with SRO Bates' finding that no compensatory education was required to compensate A.K. for the denial of [a] FAPE because any deficiencies he had suffered already had been mitigated through his pendency placement.  Therefore, A.K. was in the "position []he would have occupied had the [D]istrict complied with its obligations under the IDEA." M.M., 2017 WL 1194685, at *8; see also Reid, 401 F.3d at 518.

Furthermore, although requesting compensatory services, Plaintiffs fail to provide this Court with any information as to what those services might be or how they would make A.K. whole. In pursing such relief, Plaintiffs merely claim that they seek reimbursement for "'post-secondary' education, which will be necessary to procure after [A.K.] graduates and/or 'ages out' of the defendant district, so as to 'make up' for the education that the plaintiff has been deprived."  (Pls. Mot. at 19 n.18.) However, the record evidence fails to show that compensatory education is required in order for A.K. to "catch up" to where he

should have been absent the denial of a FAPE.  See S.A., 2014 WL 1311761 at *7.

Finally, Plaintiffs' clam that absent an award of compensatory education, there is no "incentive" for the District to "ever change its ways" and that the District will "never face any recourse whatsoever, as long as [A.K.] is receiving educational services throughout 'pendency.'"  (Pls. Mot. at 14.)  However, Plaintiffs' desire to punish the District would not serve the remedy's purpose of putting the student in the position he would have been in had the District provided him with a FAPE.  See Polera v. Bd. of Educ., 288 F.3d 478, 486 (2d Cir. 2002) ("The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy--as contrasted with reimbursement of expenses--is fundamentally inconsistent with this goal.")  Thus, awarding compensatory education here when there is "no discernible lost progress" is unwarranted and "would be akin to awarding damages which is not appropriate under the IDEA." A.S. v. Harrison Twp. Ed. of Educ., No. 14-CV-0147, 2016 WL 1717578, at *4 (D.N.J. Apr. 29, 2016) (affirming the ALJ's determination that compensatory education was unnecessary since the student "was on the right educational path and did not require restoration"), reconsideration denied in part, and granted in part on other grounds, No. 14-147, 2016 WL 4414781 (D.N.J. Aug. 18, 2016)).

In sum, finding the SRO's Decision is supported by a preponderance of the evidence, the Court affirms the SRO's determination that there is no basis for an award of compensatory education for the denial of a FAPE for the 2019-20 academic year.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for partial summary judgment (ECF No. 15) is **DENIED**.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      March _30_,2022
            Central Islip, New York